## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT W. VOGLER | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff | : | 3:14 CV 00928 (JCH) |
| | : | |
| V. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Defendant | : | OCTOBER 31, 2014 |

### MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
### FOR LACK OF SUBJECT MATTER JURISDICTION
### <u>FILED BY DEFENDANT, UNITED STATES OF AMERICA</u>

The plaintiff, Robert W. Vogler ("Plaintiff" or "Mr. Vogler"), respectfully submits the following memorandum of law in opposition to the *Motion to Dismiss for Lack of Jurisdiction* (the "Motion to Dismiss," doc. #14) and the corresponding *Memorandum of Law* ("USA Mem.") in support thereof, filed by the defendant, United States of America ("Defendant" or "USA").

## I.    <u>INTRODUCTION</u>

This Court has subject matter jurisdiction over this case because: (1) Plaintiff has complied with the requirements of § 6694(c) [1] to vest this Court with refund jurisdiction; (2) a penalty assessed under § 6694 is a "divisible tax" and Plaintiff has met the requirements of applicable law for establishing refund jurisdiction; (3) nothing in § 6694(c)(2) deprives the Court of jurisdiction over this case and (4) the USA seeks to read § 6694(c)(2) in aberrance of its plain meaning and in violation of the rules of English grammar.

Plaintiff timely filed his refund claim challenging the tax penalties improperly assessed against him.  He then filed a lawsuit for refund after the six month mandated waiting period,

---

[1] Unless otherwise stated, all statutory references are to Title 26 of the United States Code (the "Tax Code" or "Code").

within thirty days of receipt of his notice of denial of refund and within two years of the filing of his refund request. Accordingly, Plaintiff has complied with the requirements of §§ 6694, 6532 and 7422 so that this Court has refund jurisdiction. Consequently, the Court should deny the USA's Motion to Dismiss, which is premised on incorrect facts and improper reading of the law.

## II.    FACTS AND BACKGROUND

### A.    General Background

1.    Mr. Vogler is an enrolled agent licensed to practice before the Internal Revenue Service ("IRS"). (Vogler Declaration at ¶ 2, Exhibit A.)

2.    From 1973 through 1978, Mr. Vogler was an IRS revenue agent (auditor). His career began with the Economic Stabilization Program administered by the IRS. Upon termination of this program, he was sent to Hofstra University for 16 weeks of intense training to become a revenue agent. (Id. at ¶¶ 3-5.)

3.    He successfully completed his training and began his career with the IRS in its Stamford, Connecticut office. He was offered and accepted special training in tax shelters, fiduciary taxation and partnership taxation. (Id. at ¶¶ 6-7.)

4.    Thereafter, Mr. Vogler started his own tax practice in 1981 under the name of RWV Management Corp. This company handled tax preparation for small businesses and individuals. (Id. at ¶ 8.)

5.    Beginning in approximately 2007, Mr. Vogler modified his practice, making the decision *not* to assist clients with preparation or filing of payroll tax returns (such as preparation and filing of IRS Forms 940 and 941). The firm also decided to stop all preparation services related to payroll and to refer all clients to payroll services. (Id. at ¶¶ 9-10.)

6.      Since its inception, the primary business of the firm has been to provide tax return preparation services.  (Id. at ¶ 11.)

7.      Clients would typically bring tax preparation materials to the firm approximately 30 to 45 days prior to filing deadlines.  (Id. at ¶ 12.)

8.      Generally, client-provided materials were not sufficient to complete tax returns and additional information was needed.  Because this information was *always* provided after the close of the tax year, review of historical information was necessary to complete the client's tax returns.  (Id. at ¶ 13.)

9.      Thus, the firm never had the opportunity to review the current year's client data, because it was not provided in real time.  Rather, data was provided retrospectively.  (Id. at ¶ 14.)

10.     The firm's practice was to review tax data when it was assembled and complete. (Id. at ¶ 15.)

11.     A tax return cannot be prepared if the information is incomplete or does not represent the facts correctly.  (Id. at ¶ 16.)

12.     As is typical when representing small businesses and their owners, tax information was not provided timely.  Often, the firm had to file extensions for its corporate clients because materials were not ready to file, meaning that tax returns were generally filed in September or October of the year *after* the applicable tax period.  An extension for a corporate return necessitated an extension for the personal tax returns of the owners.  (Id. at ¶¶ 19-20.)

13.     In the 2009 and 2010 time frame, Mr. Vogler assisted taxpayers with preparation and filing of federal income tax returns for so-called "subchapter S" corporations, using Form 1120S.  (Id. at ¶ 21.)

3

14.    A "subchapter S" corporation, or "S-corp.", is a corporate business entity which is not taxed at the corporate level.  Rather, in general, the economic activity of the corporation is reported at the corporate level on a Form 1120S, but tax effects are recognized at the shareholder level.  (Id. at ¶ 22; *S-Corporations*, IRS SB/SE, *available at:* http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/S-Corporations (visited Oct. 23, 2014)).

15.    The preparation of tax returns, including Form 1120S, takes place after the close of the tax year.  Thus, the Form 1120S for 2013 for an S-Corp. would be prepared and filed on March 17, 2014 (or September 15, 2014 if an extension is filed).  (Vogler Declaration at ¶ 23; *Instructions for Form 1120S* at p. 2, *available at:* http://www.irs.gov/pub/irs-pdf/i1120s.pdf (visited Oct. 23, 2014)).

### B.    Facts Giving Rise to this Tax Controversy

16.    Plaintiff acted as "tax preparer" with respect to thirteen businesses (the "Tax Preparation Client(s)") organized as S-Corps. that are the subject of this lawsuit.[2]  (Revenue Agent Report and Report of Tax Return Preparer Penalty Case ("Revenue Agent Report"), Exhibit B.)

17.    On September 24, 2012 the IRS initiated an audit with respect to each Tax Preparation Client.  Following the audit, the IRS assessed tax preparer penalties pursuant to § 6694 against Plaintiff for improper conduct relating to the manner in which Plaintiff reported

---

[2] Plaintiff's Tax Preparation Clients are: Core Value Coaching, Newtown Traders Inc., New England Tree Inc., Customer Marketing Group LLC, Northeastern Supply LLC, Robert A. Pote Inc., Able Painting & Restoration LLC, JRS Remodeling LLC, Svenmedia Productions LLC, RT Builder Inc., Law Officers of Patrick Walsh LLC, Thomas A. Yates Stonework LLC, and Top Notch Painting LLC.

information concerning salary paid to the owners of the Tax Preparation Clients.  (Vogler Declaration at ¶ 27, Exhibit A.)

18.     In brief, the IRS believed that the owners of the Tax Preparation Clients were not paying themselves a "reasonable salary"[3] and that it was Plaintiff's job to ensure his clients did so.  Of course, Plaintiff was only provided with the owners' salary information *after* the close of the tax year.  Thus, he correctly reported on Form 1120S, for each Tax Preparation Client, the information he was provided based on the books and records of each Tax Preparation Client.  (Revenue Agent Report, Exhibit B.)

19.     The role of a tax preparer is to report information provided by clients correctly and accurately.  A tax preparer cannot change information, retroactively, in effect redoing the books and records of a company after-the-fact.  (Vogler Declaration at ¶¶ 24-32, Exhibit A.)

20.     Plaintiff did not assist or consult with the Tax Preparation Clients with preparation of quarterly tax returns, such as a Form 941 employment tax return.  (Id.)

21.     Thus, until his clients told him what they paid themselves, after the applicable tax year ended, Mr. Vogler was unaware of their salaries and had no input with regard to them.  (Id. at ¶ 32.)

---

[3] Under federal tax laws, if the shareholder of an S-Corp. is also an employee, the IRS requires that shareholder-employee be paid a reasonable salary to ensure proper self-employment taxes and other withholding taxes are collected and paid: "[w]here the shareholder is also an employee of the corporation, there is an incentive both for the corporation and for the employee/shareholder to characterize a payment to the employee/shareholder as a distribution rather than as compensation because only payments for compensation are subject to Federal employment taxes." *Sean McAlary Ltd., Inc. v. C.I.R.*, 2013 WL 4052429, *4 (T.C. Aug. 12, 2013).  Where a less-than-reasonable salary has been paid, the IRS (technically the "Secretary of the Treasury") has the authority to characterize flow-through income (dividends) as wages.  Rev. Rul. 74-44, 1974-1 CB 287; *McAlarty*, 2013 WL 4052429 at *5.

22.    As is typical in the industry, the Tax Preparation Clients would come to Mr. Vogler *after* the end of the applicable tax year for preparation of their Form 1120S by March 15th (or September 15th, if an extension was filed) for the applicable tax year. (Id. at ¶ 29.)

23.    On August 12, 2013 the IRS assessed preparer penalties under Code § 6694 for the 2009 and 2010 tax years. (IRS Assessments, Exhibit C.)

24.    On September 10, 2013, Mr. Vogler made four (4) separate payments (the "Payments") and filed four (4) separate refund requests (the "Refund Requests"): (a) $1,950 toward the 2009 negligence related penalty (DLN x13500); (b) $7,800 toward the 2009 willful and reckless conduct related penalty (DLN x13501); (c) $1,950 toward the 2010 negligence related penalty (DLN x13502); and (d) $7,850 toward the 2010 willful and reckless conduct related penalty (DLN x13503). (Vogler Declaration at ¶¶ 34-40, Exhibit A; Payments, Exhibit D, Refund Requests, Exhibits E – H.)

25.    The Payments and Refund Requests were sent to the IRS by way of two certified mail, return receipt requested mailings. (Vogler Declaration at ¶ 35, Exhibit A.)

26.    In one certified mailing, were the two Payments and Refund Requests directed to the 2009 penalty assessments. In the other, were the two Payments and Refund Requests directed to the 2010 penalty assessments. (Id. at ¶¶ 36-39.)

27.    The mailings were delivered to the IRS in Ogden, Utah. (Certified Mailing Receipts, Exhibit I; Certified Mailing Delivery Confirmations, Exhibit J.)

28.    Thereafter, Plaintiff was contacted by IRS' Collection Division and efforts were made to resolve the matter. (1/23/2014 IRS Appeals Letter, Exhibit L.)

29.    A Final Notice of Intent to Levy dated March 4, 2014 was received by the Plaintiff from the IRS's Collection Division. (3/4/2014 IRS Final Notice, Exhibit K.)

6

30.     Plaintiff filed a request for a Collection Due Process ("CDP") hearing on March 23, 2014.  (3/23/2014 CDP Request, Exhibit M.)

31.     The following day, Mr. Vogler's attorney responded to the 1/23/2014 IRS Appeals Letter.  (3/24/2014 Green-IRS Letter, Exhibit N.)

32.     A hearing was held with IRS Settlement Officer Sean Franklin on June 25, 2014. Plaintiff faxed in proof of the refund suit and argued the final notice had been issued to Settlement Officer Sean Franklin on June 26, 2014.  At that point, the IRS suspended collection activity.

33.     Despite the apparent settlement efforts and pending CDP hearing, on May 29, 2014, the IRS issued a denial of refund request indicating the "last date to respond to this letter" is "Aug. 27, 2014" (the "Refund Denial Notice").  (Exhibit P.)

34.     On June 18, 2014, counsel for Mr. Vogler wrote to the IRS again seeking (a) revocation of the improperly issued Final Notice of Intent to Levy and (b) a response from appeals concerning his earlier response to the 1/23/2014 IRS Appeal Letter, Exhibit Q.)

35.     On June 26, 2014, the Plaintiff filed this civil action for refund.

## III.    LAW AND ARGUMENT

### A.    Motions to Dismiss for Lack of Subject Matter Jurisdiction Generally

Pursuant to Fed. R. Civ. P. 12(b)(1), a district court may dismiss a case over which it lacks subject matter jurisdiction.  "It always must be remembered that the federal courts are courts of limited jurisdiction and only can adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder.  Thus, as is universally recognized by the federal courts, the objection presented by a motion under Rule 12(b)(1) challenging the court's subject matter jurisdiction is that the district judge has no authority or

7

competence to hear and decide the case before it."  Charles Alan Wright, et al. 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.)

"When considering a motion to dismiss for lack of subject matter jurisdiction, the court must determine whether or not the factual predicate for subject matter jurisdiction exists.  In making a determination of a motion to dismiss under Rule 12(b)(1), a court is not limited to the face of the complaint, but may consider evidence, including affidavits submitted by the parties." *Gavigan v. CIR*, 2007 WL 1238651 (D. Conn. Apr. 27, 2007) (internal citations and punctuation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"While under certain circumstances the Court is entitled to make factual determinations in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 'when a factual assault of this kind [concerning mootness] is made via affidavits and exhibits, the District Court should consider it under the summary judgment standard.' *Equal Employment Opportunity Comm'n v. The New Cherokee Corp.,* 829 F.Supp. 73, 77 (S.D.N.Y.1993)."  *Horsehead Res. Dev. Co. v. B.U.S. Envtl. Servs., Inc.*, 928 F. Supp. 287, 290 (S.D.N.Y. 1996).

**B.**    **Plaintiff Initiated Four Discrete Refund Request Claims and Complied with § 6694(c)(1)**

Section 6694(c)(1) requires that a taxpayer protesting a penalty assessed pay 15% of the assessment and file a refund request within thirty days after assessment.  Here, Plaintiff did just that.  He filed four separate Refund Requests, one with respect to each assessment, and made four separate Payments, which the USA cashed.  He created four separate packets, paper clipping

the applicable refund check to each respective Refund Request.  (Vogler Dec. at ¶¶ 34-39,

Payments, Exhibit D; Refund Requests, Exhibits E-H.)

Therefore, the USA's claim that only one Refund Request was received (USA Mem. at 8)

is factually incorrect.[4]  The Refund Requests each complied with § 6694(c)(1) and 26 C.F.R. §

1.6696-1(d)(5)(i), as Mr. Vogler (a) submitted the Refund Request on the correct form (Form

6118), (b) set forth a detailed basis for the refund, (c) attached the notice of assessment and (d)

included the appropriate Payment.  Accordingly, the USA's argument is factually wrong and the

USA's Motion to Dismiss should be denied.

## 1.    Alternatively, The Court Should Permit Jurisdictional Discovery

Many questions concerning how the IRS processed the Refund Requests exist.

Therefore, discovery is necessary to address the factual allegations made by the USA that

Plaintiff did not comply with the requirements of § 6694(c)(1).  "In resisting a motion to dismiss

under Rule 12(b)(1), plaintiffs are permitted to present evidence (by affidavit or otherwise) of the

facts on which jurisdiction rests.  In addition, courts generally require that plaintiffs be given an

opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which

discovery is sought, are peculiarly within the knowledge of the opposing party."  *Gualandi v.*

*Adams*, 385 F.3d 236, 244 (2d Cir. 2004).

Where "the jurisdictional issue and substantive claims are so intertwined that resolution

of the jurisdictional question is dependent on factual issues going to the merits,"[5] the court

---

[4] A review of the IRS taxpayer transcripts demonstrates that the Payments were all logged but *none* of the Refund Requests were logged.  (2009 Taxpayer Transcript, Exhibit R; 2010 Taxpayer Transcript, Exhibit S.)  Given the documents were all attached to one another it is unclear how or why this occurred.

[5] *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)

should either apply the summary judgment standard under Fed. R. Civ. P. 56, and construe facts in a light most favorable to Plaintiff, or "assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003). Alternatively, when confronted with jurisdictional issues that are intertwined with substantive facts or present complex factual scenarios, as here, courts may defer a jurisdictional ruling until the summary judgment stage of proceedings so that a full record can be developed. *Horsehead Res. Dev. Co. v. B.U.S. Envtl. Servs., Inc.*, 928 F. Supp. 287, 290 (S.D.N.Y. 1996) (deferring ruling on Fed. R. Civ. P. 12(b)(1) motion, concerning mootness, where an admission by defendant raised an issue of fact).

Here, it appears that the IRS administrative file on this matter is lacking, and crucial issues of fact exist concerning the factual bases for the USA's Motion to Dismiss. Jurisdictional discovery is needed to ascertain the contents of the IRS administrative file and why documents that were sent by way of certified mail, return receipt requested, *and received by the IRS*, are not part of the IRS' administrative file and *not* reflected on Mr. Vogler's taxpayer transcripts. Further, a deposition may be necessary to understand why the IRS only has one of the four Refund Requests that were sent, yet managed to cash all four 15% payment checks when ***all of the documents, including the Payments and Refund Requests, were contained in the same two certified mailing envelopes***.

One certified mailing envelope contained the 2009 Refund Requests and Payments. The other certified mailing envelope contained the 2010 Refund Requests and Payments. Further, each check was paper clipped to the applicable Refund Request. It is, hence, impossible to understand how the IRS received all four Payments but only one Refund Request. (Vogler Declaration at ¶¶ 34-39, Exhibit A.) An admission by the USA that it received all four Refund

10

Requests and Payments – as it appears occurred – would be determinative that the IRS actually received all four of the Refund Requests.

Given the high likelihood that the IRS received all four Refund Requests (given the cashing of the checks and that the Postal Service confirmed delivery to the IRS), the information contained in the IRS administrative file, including how the IRS processed this matter, is crucially important for several reasons.  First, if collection activities were ongoing, this would violate the requirement of § 6694(c)(1), that all collection actions be suspended following the filing of a refund request.  If the IRS violated § 6694(c)(1) this could impact whether the assessment had actually been completed or there was an existing proceeding that would toll applicable deadlines under §§ 6694(c)(1) or (2).  Second, the IRS and Plaintiff *were* having settlement discussions. (1/23/2014 IRS Appeals Letter, Exhibit L; 3/23/2014 CDP Request, Exhibit M; 3/24/2014 Green-IRS Letter, Exhibit N; 5/14/2014 IRS Appeals Letter, Exhibit O.)  Such discussions are relevant on whether applicable deadlines may be tolled or extended.  Third, the fact that none of the Refund Requests appear on Mr. Vogler's taxpayer transcripts, even the Refund Request that the USA acknowledges receiving, must be explored given government and taxpayer reliance on them as the official account of IRS activity.  Finally, the Refund Denial Notice contains a reference to "Aug. 27, 2014".  It is not clear what this response date is, or why it is included.

Thus, the Court should deny the Motion to Dismiss and defer consideration of any jurisdictional issues until the summary judgment stage.  Alternatively, since the burden of proof is on Plaintiff to demonstrate he complied with § 6694(c)(1), the Court should afford Plaintiff discovery, followed by an evidentiary hearing on whether Plaintiff met the requirements of § 6694(c)(1).

C.    **The Penalty is a Divisible Tax and the Court Has Refund Jurisdiction**

Because a tax penalty assessed under § 6694(a) is an amalgamation of separate penalties concerning separate events, it is a divisible tax.  To confer refund jurisdiction on this Court, Plaintiff needed only pay one divisible amount of the penalty attributed to each alleged failure before filing a refund claim and instituting a refund suit.  "The hallmark of a divisible tax is that the gross tax imposed is composed of the accumulation of discrete assessments based on separate underlying transactions, rather than being one assessment flowing from a single underlying event."  *Chief Counsel Advice Mem. 2013-15017* at 2 (Dec. 12, 2012) (the "*Section 6721 and 6722 Penalty Guidance*").[6]  When a tax is *divisible* "only a portion of the tax must be paid before a [refund] claim is filed."  *Id.*

In the *Section 6721 and 6722 Penalty Guidance* the IRS analyzed tax penalties assessed under §§ 6721 and 6722, concerning penalties for failure to file correct informational returns (§ 6721) and payee statements (§ 6722).  There, the IRS assessed penalties against the taxpayer for not filing Form 1099s for payments made for non-employee compensation, and not meeting registration requirements regarding its check cashing business.  Under both §§ 6721 and 6722 (like § 6694), the IRS may assess penalties based on each discrete violation of the statutes and for negligence and willful disregard.  *Id.*

Determining that penalties under §§ 6721 and 6722 were divisible, the IRS Office of Chief Counsel reasoned that:

> [1] each [penalty] assessment is imposed with respect to a distinct failure that is a separate 'transaction' for purposes of the penalty…
> [2 the] penalties [are] applied on a per-failure basis, but the amount of the penalty applicable to each failure is adjusted based on the circumstances surrounding the individual failure… [and  3  a]

---

[6] A copy of which is annexed hereto in the Appendix of Authorities.

> reasonable cause waiver [is] applicable [which] shows that these are transaction-based penalties.

*Section 6721 and 6722 Penalty Guidance* at 3.  Thus, where a penalty assessment is composed of discrete parts, it is divisible and only one portion of each assessment need be paid to confer refund jurisdiction: "[i]n such cases, the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions. The paradigm is excise taxes: If you're assessed $100 for each of a thousand widgets, you can pay $100-the whole tax on one of the widgets-and then go to court."  *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993) (explaining how the divisible payment rule works).  *Spivak v. United States*, 370 F.2d 612, 614 (2d Cir. 1967) (adopting divisible tax rule as to trust fund recovery penalties) (*citing*, *Steele v. United States*, 280 F.2d 89 (8th Cir. 1960).  The divisible tax rule is an exception to the Anti-Injunction Act and "full payment rule" of *Flora v. United States*, 362 U.S. 145, 80 S. Ct. 630, 4 L. Ed. 2d 623 (1960).

Here, applying the *Section 6721 and 6722 Penalty Guidance* and case law concerning the divisible tax rule, it is clear that penalties assessed under § 6694 are divisible.  Therefore, the Court has jurisdiction under the divisible tax rule.  First, a penalty under § 6694(a) is assessed "with respect to the return or claim."  In Mr. Vogler's case, the IRS assessed penalties under § 6694(a) with respect to thirteen separate returns for two separate tax years, 2009 and 2010. (Revenue Agent Report, Exhibit B.)  The *Section 6721 and 6722 Penalty Guidance* is directly on point with respect to this factor.  Second, the penalties are assessed on a "per failure" basis. Each penalty is assessed and determined as to each return that is filed, without reference to other returns, based on the information reported in each particular tax return.  (Revenue Agent Report,

Exhibit B.)  Finally, § 6694(a)(3) contains a reasonable cause exception.  Thus, § 6694 penalty

assessments are virtually identical to those made under §§ 6721 and 6772 and constitute divisible

taxes.[7]

Because the § 6694 penalty assessment is a divisible tax, the Court has refund

jurisdiction, since Plaintiff paid at least one penalty portion of each of the four assessments.  For

the Court to have jurisdiction, Plaintiff would have had to make four separate payments, two for

$1,000 and two for $5,000.  Plaintiff actually made two payments for $1,950 and two payments

for $7,800.  (Payments, Exhibit D.)  Having paid "the divisible amount of the penalty attributable

to a single failure," Plaintiff has met the requirements for conferring refund jurisdiction on the

Court.

Further, Plaintiff met the requirements of §§ 6532 and 7422 prior to initiating the instant

litigation.  Under §§ 6532 and 7422, a taxpayer must file a refund request and wait at least six

months thereafter before initiating a refund lawsuit in United States District Court, unless the

refund is denied prior to the six month period.  Section 6532(a).  Once the refund request is

denied, or the six month period expires, the taxpayer must bring suit within two years after the

refund request was filed.  *Id*; 26 C.F.R. § 301.6532-1(a) and (b).  "[T]he claim for refund must

include each ground upon which a credit or refund is claimed and facts sufficient to apprise the

Commissioner of the exact basis thereof."  I.R.M. § 34.5.2.1(3).  However, refund requests need

not be on a particular form and may be informal.  *Id.* at (4).  "The IRS can treat a taxpayer's

claim on an improper form or a claim as an informal claim for refund."  *Id.* at (5).

---

[7] "While an argument might be made that the 'total amount imposed' becomes a single lump sum rather than based on separate underlying transactions, this argument is without merit." *Section 6721 and 6722 Penalty Guidance* at 3.

Here, Plaintiff waited the requisite six months prior to filing this lawsuit and did so within the two-year limitation period. Accordingly, Plaintiff has met all of the legal requirements for seeking a refund of a divisible tax. Consequently, this Court has subject matter jurisdiction over this case and should deny the USA's Motion to Dismiss.[8]

### D.    Plaintiff Has Complied with the Statutory Requirements of § 6694(c)(2)

Although the Court need not reach this issue, nothing in § 6694(c)(2)[9] deprives the Court of jurisdiction over this case. In a well-reasoned decision, the District Court for the Eastern District of Tennessee confronted this issue in connection with the similarly worded refund

---

[8] In an abundance of caution Plaintiff has, concurrently herewith, filed a motion for leave to amend his complaint to add a second count for refund under §§ 6532 and 7422. This step is likely unnecessary as 28 U.S.C. § 1346(a) provides the Court with refund jurisdiction, but will clarify the complaint and claims.

[9] Section 6694(c) states:

**(c) Extension of period of collection where preparer pays 15 percent of penalty.--**
**(1) In general.--**If, within 30 days after the day on which notice and demand of any penalty under subsection (a) or (b) is made against any person who is a tax return preparer, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).

**(2) Preparer must bring suit in district court to determine his liability for penalty.--**If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under subsection (a) or (b) is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the tax return preparer fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

procedure under § 6703(c).[10]  *Beard v. I.R.S.*, 624 F. Supp. 646, 647 (E.D. Tenn. 1985).[11]  There, as here, the USA attempted to read into a statute language that does not exist.  This Court should adopt the reasoning of *Beard*.

All § 6694(c) states is that if a refund action initiated under § 6694(c)(2) is not timely filed, the IRS may continue collection actions against the taxpayer.  As our Supreme Court has stated: "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024 (2004) (internal citations and punctuation omitted).  Accordingly, nothing in the plain text of § 6694(c) divests this Court of subject matter jurisdiction over this refund suit.

1.    **The Cases Cited by the USA Support *Plaintiff's* Construction of § 6694(c)(2)**

All of the cases referenced by the USA either do not stand for the proposition they have been cited for, or would require this Court to violate Supreme Court jurisprudence on statutory

---

[10] It is important to note that the penalty assessment protocol for § 6700 (relating to abusive tax shelters) to which the § 6703(c) refund procedures apply is entirely different than with respect to tax preparer penalties (§ 6694). Nevertheless, in its current iteration penalties assessed under § 6700 are divisible.  *See*, *Humphrey v. United States*, 854 F. Supp. 2d 1301, 1306 (N.D. Ga. 2011) ("Congress ended the confusion over 'activity' by amending section 6700 and clarifying that "activity" refers to an individual sale; and in so doing, Congress returned the penalty to its divisible state. *Compare* 26 U.S.C. 6700(a) (2011) *with* 26 U.S.C. 6700(a) (1985)."

[11] "[The Government] argues that 26 U.S.C. § 6703(c)(2) requires that any party seeking a refund for penalties assessed must file a civil proceeding within thirty days of a rejection of an administrative claim. The defendant cites the language of the statute as supporting an absolute bar to a suit if it is not filed within thirty days. ***The Court cannot agree with defendant's reading of the statute since the gist of subsection (c)(2) is to prevent the Government from proceeding against a plaintiff for any back taxes or penalties in a situation where a partial penalty payment has been made and a claim has been filed with the Internal Revenue Service.*** The defendant attempts to read too much into the statute by claiming that a failure to file a suit within thirty days after rejection of a claim by the IRS prevents a plaintiff from proceeding with a suit. The Court rejects this reading of the statute." (Emphasis added.)

construction.  Consequently, the Court should adopt the logic of *Beard,* which comports with the text of § 6694(c) and rules of statutory construction.

In *Dalton v. United States*, 800 F.2d 1316, 1318, 1319 (4th Cir. 1986) (USA Mem. at 12-13), the Fourth Circuit ***did not hold that the district court lacked jurisdiction***: "[w]e hold that the district court had jurisdiction and affirm both judgments… We agree with the district court that the 30–day requirement in section 6703(c)(2) is not jurisdictional."[12]  It appears that the USA has misinterpreted *Dalton,* which addresses whether § 6703(c)(2) operates like a statute of limitations (an argument not raised by the USA in this case).  In any event, *Dalton* held that § 6703(c)(2) is not jurisdictional.  Moreover, *Dalton* did not address the divisible tax rule issue.  As *Dalton* notes, under the general refund statutes, §§ 6532(a) and 7422, taxpayers have two years to file a refund request.  Plaintiff complied with § 6532(a) by filing suit more than 6 months and less than 2 years after the refund request was filed.  Thus, the Court has jurisdiction over this matter.

---

[12] Similar to § 6694(c), § 6703 sets forth a scheme by which the taxpayer may pay 15% of the assessed penalty to stay collection actions:

**(c) Extension of period of collection where person pays 15 percent of penalty.-- (1) In general.**--If, within 30 days after the day on which notice and demand of any penalty under section 6700 or 6701 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).

**(2) Person must bring suit in district court to determine his liability for penalty.**--If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700 or 6701 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

*Korobkin* (USA Mem. at 12) does not contain any reasoned analysis of § 6703(c)(2), but rather recites what the district court did. The USA omits a critical portion of a quotation from *Korobkin* (USA Mem. at 12), which states in full that: "*The district court dismissed their claim, because* once a plaintiff misses the six-month-plus-30-day deadline, the district court lacks jurisdiction over the refund suit unless the taxpayer pays the entire penalty first." 988 F.2d at 976 (emphasis added to highlight portion of text omitted from USA Mem.). Thus, the Ninth Circuit identified what the district court did. There is *nothing* in the *per curiam* decision that interprets the meaning of § 6703(c)(2). Rather, the Ninth Circuit was most concerned with whether § 6700 penalties (concerning abusive tax shelters) were divisible or not.[13]

In *Sacher v. United States*, 1988 WL 572 (W.D.N.Y. Jan. 4, 1988) (USA Mem. at 12), the case was dismissed because the taxpayer filed his refund claim *too early* – prior to the expiration of the 6 month period for first asserting a refund claim under § 6703(c).[14] The decision contains no analysis of § 6703(c)(2).

*Humphrey v. United States*, 854 F. Supp. 2d 1301, 1305 (N.D. Ga. 2011) (USA Mem. at 11), again interpreting §§ 6700 and 6703 (concerning abusive tax shelters), does not support the proposition for which it is cited. *Humphrey* confirms that this Court has jurisdiction to hear this case under the divisible tax rule. First, the court found it *had* jurisdiction over the case based on the divisible tax rule: "[taxpayer] could satisfy the payment requirement so long as she paid the full penalty owed on a single sale." *Id*. at 1309. Second, while *Humphrey* says the court lacked

---

[13] The district court decision in *Korobkin* is not available on CMECF.

[14] "This claim has yet to be denied and, therefore and under section 6703(c)(2), an action for relief in the district court could not be filed by the plaintiff until six months after the day on which he filed his claim for refund or June 20, 1987, the first day of the thirty-day period following the six-month hiatus. The Complaint was filed June 4, 1987 and thus was not within section 6703(c)(2). The plaintiff, apparently aware of the problem, had filed a second claim in this Court for the 1984 penalty."

jurisdiction under § 6703(c), the court's reasoning is questionable because it held that a refund lawsuit *had* to be brought *prior to* 6 months after the filing of a refund request: "in this case, Plaintiff admits that she failed to bring this action within 6 months of filing for [sic] refund; thus, Plaintiff cannot rely upon the 15% exception in subsection 6703(c) to invoke jurisdiction." *Id.* at 1305. It is not at all clear what the court means, because even the USA does not interpret § 6694(c)(2) as requiring a refund suit to be initiated *before* 6 months expires. In any event, the court's statements concerning jurisdiction under § 6703(c) are *dicta,* because the court found jurisdiction under the divisible tax rule.

*Kline v. United States*, 586 F. Supp. 338, 340 (N.D. Ohio 1984) (USA Mem. at 10) interprets § 6694(c)(1), concerning the refund procedure, not § 6694(c)(2). There, the court held that the administrative refund claim was not timely filed: "plaintiff did not pay 15 percent of the penalties assessed against him within 30 days of the assessment." As set forth above, Plaintiff clearly met the requirements of § 6694(c)(1) by making the 15% payment and requesting the refund within the 30 day time frame. Further, *Kline* does not address the application of the divisible tax rule.

*Mayo v. United States*, 1982 WL 1652 (W.D. La. May 10, 1982) (USA Mem. at 10) is cited by the USA for the proposition proposed: that there is a 30 day jurisdictional trap door in § 6694(c). However, the court provides no reasoning behind its decision and *the taxpayer did not even oppose the government's motion to dismiss. Id.* at *1.[15] Thus, there is no precedential value to *Mayo*, especially when read in light of *Beard* and the *Mayo* court's failure to address the

---

[15] *Ortiz v. Household Finance Corp. (In re Ortiz)*, 241 B.R. 460, 461, *abrogated on other grounds by* 313 F.3d 1220 (Bankr. E.D. Cal. 1999) (noting that prior BAP decision was "substantially diminished in precedential value by virtue of the lack of participation on the part of the losing defendant"); *Feuer v. Thompson*, 2013 WL 2950667 at *4 (N.D. Cal. 2013) (same).

applicability of the divisible tax rule.  Similarly, *O'Keefe v. United States*, 1981 WL 1745 (D. Or. Jan. 2, 1981) (USA Mem. at 11), contains no reasoned analysis of § 6694(c)(2) or discussion of the divisible tax rule.

### 2.    Rules of English Grammar Support Plaintiff's Construction of § 6694(c)(2)

A parenthetical phrase in a sentence cannot overwrite the main clause.  Rather, parentheses are correctly used to enclose information that clarifies the main sentence or constitutes an aside:

> Whatever the material inside the parentheses, it must not be grammatically integral to the surrounding sentence.  If it is, the sentence must be recast.  This is an easy mistake to avoid.  Simply read your sentence without the parenthetical content.  If it makes sense, the parentheses are acceptable; if it doesn't, the punctuation must be altered.

*The Punctuation Guide*, *available at: http://www.thepunctuationguide.com/parentheses.html* (visited Oct. 23, 2014).  "Parentheses are mainly used to separate off information that isn't essential to the meaning of the rest of the sentence. *If you removed the material within the parentheses, the sentence would still make perfectly good sense*."  *Oxford Dictionaries Online*, *available at:* http://www.oxforddictionaries.com/us/words/parentheses-and-brackets-american (visited Oct. 23, 2014) (emphasis added).

Here, to ascertain the correct meaning of the parenthetical phrase in § 6694(c)(2) the sentence should be read removing the phrase.  Applying basic rules of English grammar, and to attribute appropriate meaning to all aspects of § 6694(c)(2), the correct reading of the

20

parenthetical phrase must be to *clarify* that if the notice of denial is sent *before* the expiration of the six months, the taxpayer still has until thirty days after the six month period from the filing of his refund request, to initiate a refund lawsuit.  Under a grammatically correct reading, the parenthetical phrase cannot, as the USA advocates, alter the meaning of the main sentence: "[t]he use of a parenthesis being to insert, without damage to the rest of the sentence, something that is of theoretically minor importance, it is necessary that we should be able simply to remove the two dashes or brackets with everything enclosed by them, and after their removal find the sentence complete and rightly punctuated."  H.W. Fowler, *The Kings English* (2d Ed. 1908), *available at:* http://www.bartleby.com/116/404.html (visited Oct. 23, 2014) (a copy of which is included in the Appendix of Authorities.

The USA reads the parenthetical clause to subsume the main clause.  That is, the controlling date for filing a refund lawsuit is six months plus thirty days (parenthetical phrase), not thirty days from the issuance of the notice of denial of the refund (main clause).  Such a reading would be a dramatic break from the rules of English grammar.  No doubt, § 6694(c)(2) is not a model of statutory draftsmanship, but grammar rules are not suspended at the door of Congress.  Statutes must be read according to well established grammatical rules.  *U.S. v. Goldberg*, 168 U.S. 95, 102 (1897) (in crafting legislation, the legislator "is presumed to know… the rules of grammar"); *U.S. v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012) (construing Sentencing Guidelines by "applying the basic rules of English grammar"); *Anhydrides & Chemicals, Inc. v. U.S.*, 130 F.3d 1481, 1483 (Fed. Cir. 1997) (noting that "[t]he rules of grammar apply in statutory construction"); *Natural Resources Defense Council, Inc. v. U.S. Food and Drug Admin.*, 884 F.Supp.2d 127, 141 (S.D.N.Y. 2012) (noting that "[s]tatutory interpretation must take into account the 'structure and grammar' of the provision") (*citing  Bloate v. United States*,

21

559 U.S. 196, 197 (2010)); *In re Swetic*, 493 B.R. 635, 639 (Bankr. M.D. Fla. 2013) (interpreting Florida law, noting that "[t]he Court must follow fundamental principles of grammar when interpreting a statute.").

Since Plaintiff filed this refund lawsuit within thirty days after issuance of the Notice of Denial, it was timely filed and this Court has subject matter jurisdiction over this case (even if the Court disregards Plaintiff's other arguments set forth above).  Applying rules of statutory construction and English grammar, the USA's Motion to Dismiss should be denied as § 6694(c)(2) cannot be read to allow a parenthetical phrase to over write the main clause of a sentence.

**IV.    <u>CONCLUSION</u>**

For the above stated reasons, the Court should deny the USA's Motion to Dismiss.

THE PLAINTIFF: Robert W. Vogler

By:      /s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz (ct20938)
Green & Sklarz LLC
700 State Street, Suite 304
New Haven, CT 06511
(203) 285-8545
Fax: (203) 823-4546
jsklarz@gs-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below a copy of the foregoing was served by CMECF and/or mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


Date:   October 31, 2014                    /s/ Jeffrey M. Sklarz